1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON D. McNEAL, | 1:07-cv-00851-GSA (PC) |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| MAYBERG, et. al., | (Doc. 1) |
| Defendants. | |
| _____/ | |

## I.   **SCREENING ORDER**

Don D. McNeal ("Plaintiff") is a Sexually Violent Predator (SVP) civil detainee proceeding pro se and in forma pauperis.  Plaintiff filed his complaint on June 13, 2007.

### A.   **Screening Requirement**

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

1

**B.      Summary of Plaintiff's Complaint**

Plaintiff is a SVP at Coalinga State Hospital (CSH) in Coalinga, California – where the acts he complains of occurred.

Plaintiff names defendants: Stephen Mayberg, Director of California Department of Mental Health; Ben McClain, Executive Director (A); Gary Renzaglia, Clinical Director; Linda Clark, CPS Movie Chairperson; Rocky Spurgeon, Program Director; Eddie Sanchez, Security Director; Chuck Rabault, Chief of Police; Tom Hunt; and Does 1-99.

Plaintiff alleges that a number of policies and procedures at CSH violate his constitutional rights (i.e. visitation restrictions; restriction of movies for private viewing; searches of dorms; seizure/restriction of possession of personal items; noises within living quarters via the PA system; police officers involvement in patient treatment plans rather than health care workers; searches of mail; job assignment and training; and residents' wages). Specific factual details will be discussed and analyzed under the correlating subsection herein below.

Plaintiff seeks declaratory, injunctive, and monetary relief.

Plaintiff has stated some cognizable claims, and may be able to amend to correct deficiencies in his pleading so as to state additional cognizable claims.  Thus, he is being given the applicable standards based on his delineated claims for relief and leave to file a first amended complaint.

**C.      Plaintiff's Claims for Relief**

**1. *Visitation Restrictions***

Plaintiff alleges his constitutional rights have been infringed via CSH's policy not to allow visitation from anyone under the age of eighteen (18).  (Doc. 1, pp. 12-13.)

Fourteenth Amendment

SVPs must, at a minimum, be afforded the rights afforded prisoners confined in a penal institution. Hydrick v. Hunter 500 F.3d 978, 998 (9th Cir. 2007).  A parent has a fundamental interest in maintaining his relationship with his child.  Lee v. City of Los Angeles, 250 F.3d 668,

685 (9th Cir. 2001).  However, the parent's incarceration places substantial restrictions on his

rights of association, even with his family.  Overton v. Bazzetta, 539 U.S. 126, 131 (2001).

The Due Process Clause of the Fourteenth Amendment protects prisoners from being

deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S.

539, 556 (1974).  "Prison disciplinary proceedings are not part of a criminal prosecution, and the

full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell,

418 U.S. 539, 556 (1974).  With respect to prison disciplinary proceedings, the minimum

procedural requirements that must be met are:  (1) written notice of the charges; (2) at least 24

hours between the time the prisoner receives written notice and the time of the hearing, so that

the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence

they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call

witnesses in his defense, when permitting him to do so would not be unduly hazardous to

institutional safety or correctional goals; and (5) legal assistance to the prisoner where the

prisoner is illiterate or the issues presented are legally complex.  Id. at 563-71.  As long as the

five minimum Wolff requirements are met, due process has been satisfied.  Walker v. Sumner,

14 F.3d 1415, 1420 (9th Cir. 1994).  "Some evidence" must support the decision of the hearing

officer.  Superintendent v. Hill, 472 U.S. 445, 455 (1985).  The standard is not particularly

stringent and the relevant inquiry is whether "there is *any* evidence in the record that could

support the conclusion reached . . . ."  Id. at 455-56 (emphasis added).

Plaintiff fails to state a cognizable claim as he does not allege sufficient facts for the

Court to ascertain whether a liberty interest was infringed upon.  Plaintiff complains of the

prohibition of visits from relatives under the age of 18 for all patients, but there is no mention as

to whether he has been unreasonably restricted from visits from his own children, and/or who, if

any, of his own immediate family have been unable to visit him.[1]  Plaintiff also fails to state

---

[1] Plaintiff complains that "the policy is causing many *patients* to go without visitation and support from friends and family because babysitters cannot be found." (Doc. 1, p. 12.)  Plaintiff also refers to himself in the plural form variously throughout his complaint.  However, Plaintiff is not an attorney and is proceeding without counsel.  A non-attorney proceeding pro se may bring his own claims to court, but may not represent others.  Fymbo v. State Farm Fire & Casualty Co., 213 F.3d 1320, 1321 (2000); Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir.

what, if any, procedural due process he was provided before this restriction/prohibition was imposed.  Thus, Plaintiff's claim under the Fourteenth Amendment regarding the prohibition of all visitors under the age of 18 is not cognizable at this time.

<u>Equal Protection</u>

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985).  A plaintiff may establish an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class.  <u>See</u>, <u>e.g.</u>, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir.2001).  Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.   <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>San Antonio School District v. Rodriguez</u>, 411 U.S. 1 (1972); <u>Squaw Valley Development Co. v. Goldberg</u>, 375 F.3d 936, 944 (9th Cir.2004); <u>SeaRiver Mar. Fin. Holdings, Inc. v. Mineta</u>, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that:  (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  <u>Village of Willowbrook</u>, 528 U.S. at 564.   If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive."  <u>Squaw Valley</u>,  375 F.3d at 944; <u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1187 (9th Cir.1995).

1997); <u>C. E. Pope Equity Trust v. United States</u>, 818 F.2d 696, 697 (9th Cir. 1987).  A pro se litigant simply cannot "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4); <u>Fymbo</u>, 213 F.3d at 1321. Therefore, this action will be construed as an individual civil suit brought by Plaintiff rather than as a class action.

4

1    Even though SVPs do not constitute a suspect class, heightened scrutiny may be required

2    where fundamental interests are at issue.  See Harper v. Va. State Bd. of Elections, 383 U.S. 663,

3    670 (1966) and Police Dep't of Chicago v. Mosley, 408 U.S. 92 (1972).  A "heightened scrutiny

4    standard" has been utilized when evaluating an equal protection violation under sexually violent

5    predator statutes.  See Young v. Weston, 176 F.3d 1196, 1201 (9th Cir.1999), *rev'd on other*

6    *grounds*, Seling, 531 U.S. 250.  While Young was decided in 1999, it rested on a firmly

7    established principle in existence at the time of events in question: that heightened scrutiny will

8    be applied where a fundamental liberty interest is at stake. See Skinner v. Oklahoma, 316 U.S.

9    535, 541 (1942).

10    Plaintiff may be able to claim violations of a clearly established fundamental right.

11    Youngberg, 457 U.S. at 315-316.  Accordingly, a Plaintiff may be able to show that a difference

12    in treatment between himself and other civilly committed persons violates equal protection

13    because such treatment does not meet heightened scrutiny.  At the same time, it cannot be said

14    that it is firmly established that *every* condition of an SVP's confinement is subject to heightened

15    scrutiny.  Hydrick v. Hunter 500 F.3d 978, 998 (9th Cir. 2007).  In the prison setting, it is clear

16    that prison officials need latitude in deciding how to run prisons, and the courts have refused to

17    subject each classification drawn by prison officials to heightened scrutiny.  Rather, a prisoner

18    cannot challenge the conditions of his confinement on equal protection grounds unless the

19    discrimination against him is irrational or arbitrary.  See McGinnis v. Royster, 410 U.S. 263, 276

20    (1973).

21    Once again, Plaintiff complains of the prohibition of visits from relatives under the age of

22    18 for all patients, but there is no mention as to whether he has been unreasonably restricted from

23    visits from his own children, and what, if any of his own immediate family have been unable to

24    visit him.  Plaintiff fails to state whether other SVP's receive different visitation restriction(s).

25    Plaintiff has not, but might be able to, state a cognizable claim for violation of his rights on equal

26    protection grounds.

27                                   Cruel & Unusual Punishment

28    Plaintiff alleges that the visitation restrictions at CSH constitute cruel and unusual

1   punishment in violation of the Eighth Amendment.  The Eighth Amendment has, as an essential

2   prerequisite, the right to punish.  See DeShaney v. Winnebago County Dept. of Soc. Servs., 489

3   U.S. 189, 199 n. 6 ("The State does not acquire the power to punish with which the Eighth

4   Amendment is concerned until after it has secured a formal adjudication of guilt in accordance

5   with due process of law.").  SVPs are detained for the purpose of treatment, and the state's power

6   to punish them expires at the end of their sentence.  Accordingly, the Eighth Amendment is not

7   the proper vehicle to challenge the conditions of civil commitment. See Bell v. Wolfish, 441 U.S.

8   520, 535 n. 16 (1979).

9        The thrust of the Plaintiff's claim here is that visitation restrictions amount to cruel and

10  unusual punishment.  This "punitive as applied" argument is foreclosed by Seling.  Therefore, an

11  SVP plaintiff cannot state cognizable claims regarding the conditions of their confinement under

12  the Eighth Amendment.  Please see the analysis under the Fourteenth Amendment herein above.

13               **2. *Movie Restrictions***

14       Plaintiff claims that, after an agreement was reached between the hospital administration

15  and the Patients Advisor Council as to content ratings and restrictions of DVD movies for

16  patients' personal use, defendants began applying a different, much more restrictive policy,

17  which lead to the violation of his constitutional rights under the First Amendment, Ninth

18  Amendment, Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the

19  violation of his rights under sections 1985 and 1986.  (Doc. 1, pp. 7-11.)

20               First and Fourteenth Amendments

21       "[C]ivilly detained persons must be afforded 'more considerate treatment and conditions

22  of confinement than criminals whose conditions of confinement are designed to punish.'"

23  Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007) (quoting Youngberg v. Romeo, 457 U.S.

24  307, 322 (1982)).  Therefore, "the rights afforded prisoners set a floor for those that must be

25  afforded . . ." civil detainees.  Id.  In determining the rights of civil detainees, "[t]he law generally

26  requires a careful balancing of the rights of individuals who are detained for treatment, not

27  punishment, against the state's interests in institutional security and the safety of those housed at

28  the facility."  Id. at 8.  Detainees "retain those . . . rights not inherently inconsistent with the

circumstances of their detention."  Id. at 9.

Plaintiff's allegations regarding the DVD restrictions state cognizable claim(s) under the First Amendment and Fourteenth Amendment.  Fed. R. Civ. P. 8(a); Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007); Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

Ninth Amendment

Plaintiff alleges a claim for relief for violation of the Ninth Amendment, which provides that  "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const., amend. IX.  The Ninth Amendment does not provide a basis upon which plaintiff may impose liability under section 1983 because it does not "independently [secure] any constitutional right . . . ."  Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986) (citations omitted); Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1029 (9th Cir. 2002) (Ninth Amendment claim properly dismissed because plaintiff's may not "'double up' constitutional claims"), aff'd sub nom. Groh v. Ramirez, 540 U.S. 551 (2004); Schowengerdt v. United States, 944 F.2d 483, 490 (9th Cir. 1991) (Ninth Amendment "not interpreted as independently securing any constitutional rights for purposes of making out a constitutional claim").  Accordingly, Plaintiff's attempt to impose liability for violation of the Ninth Amendment fails as a matter of law.

**3.** *Search & Seizure*

Plaintiff complains that, during a lock down, super glue and a three inch screw driver were found in a dorm room assigned to four men.  Subsequently, the entire unit was locked down and searched.  Plaintiff complains that during the search, his "CD rewritables" were confiscated, but that such "CD rewritables" were not contraband as they were available for purchase by all patients at the canteen.  (Doc. 1, pp. 11-12.)

Fourth Amendment

The Ninth Circuit has held that "the Fourth Amendment right to be secure against unreasonable searches and seizures 'extends to incarcerated prisoners.' "  Thompson v. Souza, 111 F.3d 694, 699 (9th Cir.1997) quoting Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir.1988)).  Thus, this protection certainly extends to SVPs.  Hydrick v. Hunter 500 F.3d 978,

1   993 (9th Cir. 2007).

2       "The reasonableness of a particular search [or seizure] is determined by reference to the

3   [detention] context." Michenfelder, 860 F.2d at 332. There are concerns that mirror those that

4   arise in the prison context: e.g., "the safety and security of guards and others in the facility, order

5   within the facility and the efficiency of the facility's operations." Andrews v. Neer, 253 F.3d

6   1052, 1061 (8th Cir.2001). The "reasonableness" of a search or seizures is a fact-intensive

7   inquiry that cannot be determined without submission of evidence. Hydrick v. Hunter 500 F.3d

8   978, 993 (9th Cir. 2007) referring to Thompson, 111 F.3d 694 (9th Cir.1997).

9       Plaintiff states a cognizable claim under the Fourth Amendment regarding the search of

10  all of the unit, (and confiscation of his "CD rewritable's") when super glue and a three inch

11  screw driver were found in one dorm. However, the Court will not be able to address the

12  "reasonableness" of that search and seizure until evidence is submitted.

13                          Fifth Amendment

14      The Takings Clause of the Fifth Amendment "limits the government's ability to

15  confiscate property without paying for it," and "is designed to bar Government from forcing

16  some people alone to bear public burdens which, in all fairness and justice, should be borne by

17  the public as a whole." Vance v. Barrett, 345 F.3d 1083, 1089 (9th Cir. 2003) (internal

18  quotations and citation omitted).

19      Plaintiff's personal property was not confiscated by Defendants for public purpose and

20  his Takings claim fails as a matter of law. See Kelo v. City of New London, Connecticut, 545

21  U.S. 469, 477-80 (2005).

22                        Fourteenth Amendment

23      The Due Process Clause protects prisoners from being deprived of property without due

24  process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected

25  interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However,

26  while an authorized, intentional deprivation of property is actionable under the Due Process

27  Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman

28  Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither

                                        8

negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson v. Palmer, 468 U.S. 517, 533 (1984).

An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Logan v. Zimmerman Brush Co., 455 U.S. at 436; Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987).

"An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

Plaintiff's claim regarding the confiscation of his "CD rewritables" is not cognizable under the Fourteenth Amendment. Plaintiff has not alleged sufficient facts for the Court to determine whether the deprivation was authorized, or unauthorized. However, the implication from Plaintiff's allegations is that the taking was unauthorized – i.e. not carried out pursuant to established state procedures, regulations, or statutes. If it was authorized, as long as Plaintiff was provided with process, prison officials may deprive him of his property.

**4. *Mail***

1    Plaintiff alleges on December 11, 2006, Administrative Directive ("AD") #662 was

2  implemented.  AD #662 required that all incoming and outgoing, regular and legal, mail be

3  "seized and opened without just cause" by Police Officers.  (Doc. 1, pg. 11.)

4                                    First Amendment

5    Prisoners have "First Amendment right to send and receive mail." Witherow v. Paff, 52

6  F.3d 264, 265 (9th Cir. 1995).  Prison regulations relating to the regulation of incoming mail are

7  analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-

8  91 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  The regulation is valid if it is

9  reasonably related to legitimate penological interests. Turner, 482 U.S. at 89.  In determining the

10  reasonableness of the regulation, court must consider the following factors: (1) whether there is a

11  "valid, rational connection between the regulation and the legitimate government interest put

12  forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the

13  impact that the "accommodation of the asserted constitutional right will have on guards and other

14  inmates," and (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.

15    Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the

16  regulation furthers "an important or substantial government interest unrelated to the suppression

17  of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is

18  necessary or essential to the protection of the particular governmental interest involved."

19  Procunier v. Martinez, 416 U.S. 396, 413 (1974) (overturned by Thornburgh v. Abbott, 490 U.S.

20  401, 413-14 (1989) only as test relates to *incoming mail* - Turner test applies to incoming mail).

21    Plaintiff has recognized rights which are protected by the First Amendment. Roberts v.

22  United States Jaycees, 468 U.S. 609, 618, 104 S.Ct. 3244 (1984).  Plaintiff is civilly detained in a

23  state hospital, and as a result, some curtailment of his rights may be expected. Overton v.

24  Bazzetta, 539 U.S. 126, 131, 123 S.Ct. 2162 (2003); Hydrick v. Hunter, 500 F.3d 978, 991 (9th

25  Cir. 2007).  Consideration of whether hospital officials' actions impermissibly infringed upon

26  Plaintiff's rights requires a balancing of Plaintiff's rights with the State's interests in institutional

27  safety and security. Hydrick, 500 F.3d at 990.  Because a balancing of those rights and interests

28  requires the parties to make an evidentiary showing as to their positions, the Court is not in a

1  position to make a determination at the pleading stage. <u>Barrett v. Belleque</u>, No. 06-35667, 2008

2  WL 4291159, *1 (9th Cir. Sept. 22, 2008).

3       The Court finds that Plaintiff has stated a cognizable claim for relief based on the seizing

4  and opening of Plaintiff's incoming and outgoing regular mail.

5       The mere fact that prison officials open and conduct a visual inspection of a prisoner's

6  legal correspondence does not state a claim for violation of a prisoner's constitutional rights. <u>See</u>

7  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576-77 (1974); <u>Mitchell v. Dupnick</u>, 75 F.3d 517, 523 (9th

8  Cir. 1996).  Prison officials may, consistent with the First Amendment, open mail from attorneys

9  in the presence of the prisoner for visual inspection.  <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539,

10  576-7 (1974); <u>Sherman v. MacDougall</u>, 656 F.2d 527, 528 (9th Cir. 1981).  In <u>Wolff v.</u>

11  <u>McDonnell</u>, the Supreme Court noted that inspecting mail from attorneys in the presence of the

12  inmate did all, and perhaps even more, than the Constitution requires. <u>Id</u>. at 577.  The issue of

13  whether or not prison officials may also, consistent with the First Amendment, open and visually

14  inspect mail from attorneys outside the presence of a prisoner, and/or SVP has not been decided

15  by the Supreme Court or by the Ninth Circuit.  In <u>Wolff v. McDonnell</u>, the legal mail at issue

16  was mail sent to respondent from his own attorney.  Correspondence between an attorney and a

17  client is entitled to special protection under the attorney-client privilege.  "Mail from the courts,

18  as contrasted to mail from a prisoner's lawyer, is not legal mail."  <u>Keenan v. Hall</u>, 83 F.3d 1083,

19  1094 (9th Cir. 1996).  "All correspondence from a court to a litigant is a public document, which

20  prison personnel could if they want inspect in the court's files."  <u>Id</u>. at 1094 (citing to <u>Martin v.</u>

21  <u>Brewer</u>, 830 F.2d 76, 78 (7th Cir. 1987)).

22       Plaintiff's claim regarding the seizing and opening of his legal mail is not cognizable at

23  this time.  Plaintiff has not stated enough details regarding the seizing and opening of the mail he

24  considers to be "legal" in nature for the Court to ascertain whether he might be able to state a

25  cognizable claim.

26            **5.  *Conditions of Commitment***

27       Plaintiff's allegations might be interpreted to allege that the conditions at CSH constitute

28  cruel and unusual punishment in violation of the Eighth Amendment.  The Eighth Amendment

1   has, as an essential prerequisite, the right to punish. See DeShaney v. Winnebago County Dept.

2   of Soc. Servs., 489 U.S. 189, 199 n. 6 ("The State does not acquire the power to punish with

3   which the Eighth Amendment is concerned until after it has secured a formal adjudication of

4   guilt in accordance with due process of law.").

5   Any interpretation that Plaintiffs claims his conditions of confinement amount to

6   punishment, is not cognizable under the Eighth Amendment.  Any "punitive as applied"

7   argument is foreclosed by Seling v. Young, 531 U.S. 250 (2001).  Therefore, an SVP plaintiff

8   cannot state cognizable claims regarding the conditions of their confinement under the Eighth

9   Amendment.

10   "... SVP's are detained for the purpose of treatment, and the state's power to punish them

11   expires at the end of their sentence.  Accordingly, the Eighth Amendment is not the proper

12   vehicle to challenge the conditions of civil commitment."  Hydrick v. Hunter 500 F.3d 978, 994

13   (9th Cir. 2007) citing Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).

14   The standard applicable to SVPs under the Fourteenth Amendment is at least coextensive

15   with that applicable to prisoners under the Eighth Amendment. See, e.g., Munoz v. Kolender,

16   208 F.Supp.2d 1125, 1146 (S.D.Cal.2002) (applying Fourteenth Amendment standards to SVPs

17   because "comparable standards apply to both prisoners' Eighth Amendment cruel and unusual

18   punishment and Fourteenth Amendment substantive due process analyses, with Fourteenth

19   Amendment analysis borrowing from Eighth Amendment standards"); Frost v. Agnos, 152 F.3d

20   1124, 1128 (9th Cir.1998) (applying Eighth Amendment standards to evaluate pretrial detainees'

21   Fourteenth Amendment claims).

22   Since there is a dearth of cases regarding unconstitutional conditions of confinement

23   under the Fourteenth Amendment, those cases addressing unconstitutional conditions of

24   confinement under the Eighth Amendment at least provide the minimum standards to be applied

25   in reviewing such claims raised by SVPs.  Hydricks v. Hunter 500 F.3d 978, 997 (2007) citing

26   Munoz v. Kolender, 208 F.Supp.2d 1125, 1146 (S.D.Cal.2002) and Anderson v. County of Kern,

27   45 F.3d 1310, 1314-15 (9th Cir.1995) (collecting cases in prison context).

28   Plaintiff alleges that, at CSH, he was prohibited from possessing a number of personal

1    items which he was allowed to possess while in prison, and which SVP's in the State of

2    Washington are allowed to possess. (Doc. 1, pp. 13-14.) Treatment is presumptively punitive

3    when a civil detainee is confined in conditions identical to, similar to, or more restrictive than his

4    criminal counterparts. Jones v. Blanas, 393 F.3d 918, 932-33 (9th Cir. 2004) (citations omitted).

5    Thus, Plaintiff states a cognizable claim regarding the prohibition of personal property items.

6         Plaintiff also complains that, the PA System is entirely too loud in patients rooms, that

7    they are "effectively damaging patients hearing," and that at least once a week since March of

8    2006, the PA System has been used to awaken patients at early morning hours with false alarms

9    and testing. (Doc. 1, pg. 15.) "[P]ublic conceptions of decency inherent in the Eighth

10   Amendment require that [inmates] be housed in an environment that, if not quiet, is at least

11   reasonably free of excess noise." Keenan v. Hall 83 F.3d 1083, 1090 (9th Cir. 1996) citing

12   Toussaint v. McCarthy, 597 F.Supp. 1388, 1397, 1410 (N.D.Cal.1984) (finding an "unrelenting,

13   nerve-racking din"), aff'd in part, rev'd in part on other grounds, 801 F.2d 1080, 1110 (9th

14   Cir.1986), cert. denied, 481 U.S. 1069 (1987). A claim regarding conditions causing a prisoner

15   "grave sleeping problems" and other mental and psychological problems has been found

16   cognizable. Keenan at 1090. Thus, Plaintiff states a cognizable claim as to the PA System

17   damaging patients hearing and disrupting their sleep on a regular and repeated basis.

18        Plaintiff complains that police officers are on treatment units, overseeing SVPs' daily

19   needs instead of licensed mental health care providers. (Doc. 1, pp. 5-7.) Plaintiff alleges that he

20   "now expect[s] the hospital policies to become more restrictive with a police force armed to back

21   the policies enacted by administrators and police, which violate patients' constitutional rights."

22   (Doc. 1, p. 6.) The fact that CDCR officers are on the treatment units overseeing SVPs' daily

23   needs instead of licensed mental health care providers, without more, does not offend the

24   Constitution. Further, Plaintiff's anticipation that the policies will become more restrictive are

25   speculative. Therefore, Plaintiff's claims arising from the mere fact that armed CDCR officers

26   are on the units with patients, instead of licensed mental health care providers, are not cognizable

27   under section 1983.

28        Plaintiff further complains that, during a lock down, super glue and a three inch screw

13

driver was found in a dorm assigned to four men.  Subsequently, that entire unit was locked

down and searched.  Plaintiff complained that during that search he proceeded to the restroom

where a female officer was patting down patients before entering and upon leaving, and that the

door was open "allowing anyone to peer into the restroom." (Doc. 1, p. 12.)  Plaintiff does not

allege that he went into the bathroom and was searched upon entry and leaving, or that he was

gratuitously observed while utilizing the facilities.  Civil detainees do not enjoy an *absolute* right

to be free from observation while nude, shackles, or strip searches, and Plaintiff has not alleged

any facts which would support a claim that these conditions were unreasonable or gratuitous

under the circumstances.  Hydrick, 500 F.3d at 992-1000.  Therefore, Plaintiff's bare allegations

that his constitutional rights were violated because the female officer was patting down other

patients upon entry and leaving the restroom with the door open, during a lock down of the unit,

are not cognizable.

In Plaintiff's prayer for relief, among other things, he requests the court issue orders: "for

CSH to open the main yard so that patients can run, exercise, and play sports, this is a right;" and

"establishing a non-smoking treatment unit for non-smokers, or a smoking room for those who

want to smoke without infringing upon the non-smokers rights." (Doc. 1, pp. 17-18.)  Plaintiff

fails to state any facts as to how access to the main yard is unconstitutionally restricted and how

current smoking/non-smoking areas, policies, and the like, might rise to the level of a

constitutional violation.  Thus, any claims that Plaintiff might intend to raise as to the main yard

and regarding the smoking policies at CSH are not cognizable at this time.

### 6. *Vocational Training/Placement*

Plaintiff alleges that "CSH has adopted a policy of trying to coerce patients into treatment

by using a discriminatory practice of allowing patients who are involved in Phases, first choice of

jobs or vocational training programs when they become available." (Doc. 1, p. 14.)  The Court

has found that at least one other District Court has found similar, if not identical, practices by a

state hospital of encouraging treatment participation with vocational opportunities is a

constitutionally sound protocol for encouraging pro-social behavior and treatment participation

by SVP residents.  See Spicier v. Richards, WL 4561101, p. 6, (W.D. Wash. 2007).  This Court

concurs with the <u>Spicier</u> Court's analysis.

Further, it does not appear that Plaintiff would have a liberty interest in any vocational placement,[2] <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (1995), and Plaintiff would not have a property interest in any such job.  <u>See</u> <u>Vignolo v. Miller</u>, 120 F.3d 1075, 1077 (9th Cir. 1997); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (9th Cir. 1995).  Because Plaintiff has neither a liberty interest nor a property interest in vocational placement, Plaintiff was not entitled to any procedural due process protections in conjunction with his vocational training/placement opportunities, or lack thereof.  Plaintiff has not alleged any facts that suggest that he was removed and/or denied vocational training/placement on a basis that infringed upon any constitutionally protected interests.  <u>Vignolo</u>, 120 F.3d at 1077.  Accordingly, Plaintiff's allegations regarding vocational issues and treatment participation fail to give rise to a cognizable constitutional violation.

### 7. *Wages*

Plaintiff claims that he was not provided appropriate wages for his services as an employed patient worker at CSH.  Plaintiff claims the wages he received violated the Fair Labor Standards Act ("FLSA"), the Thirteenth Amendment (forced involuntary servitude), the Fourteenth Amendment, and the Equal Protection Clause.  (Doc. 1, pp. 15-16.)

### FLSA

The FLSA was enacted in 1938.  It requires employers to pay employees a minimum hourly wage and overtime pay.  29 U.S.C. §§ 201-219 (1988).  Its essential purpose is to provide for workers a "minimum standard of all living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202.  If the prisoner's sentence compels the work and the prisoner's custodian sets the wages, the Fair Labor Standards Act does not protect the prisoner.  <u>Henthorn v. Dept. of Navy</u> 29 F.3d 682 (D.C. Cir. 1994).  Thus, to the extent that Plaintiff has

---

[2] In <u>Sandin v. Connor</u>, 515 U.S. 472 (1995), the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations.  <u>Id.</u> at 481-84.  Instead, the Court adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation.  <u>Id.</u>  In doing so, the Court held that liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Id.</u> at 484.

1  been compelled to work as a part of his commitment, he is not entitled to the a minimum hourly

2  wage and/or overtime pay.

3      The Supreme Court, in a non-prisoner case, has articulated an "economic reality test" to

4  be considered in deciding if an employee-employer relationship exists.  In Goldberg v. Whitaker

5  House Coop., 366 U.S. 28, 33, (1961), the Court held that a determination under the FLSA of

6  whether an employment relationship exists should be based on the "economic reality" of the

7  employment situation. The Court did not specify the factors to be weighed in this evaluation.

8  The Ninth Circuit, in deciding if an employer-employee relationship exists, has applied an

9  "economic reality" test which identifies four factors:

10      whether the alleged employer (1) had the power to hire and fire the employees, (2)

11      supervised and controlled employee work schedules or conditions of employment, (3)

12      determined the rate and method of payment, and (4) maintained employment records.

13      The proper starting point in a case such as this is the state's complete control over its

14  inmates.  Where the state provides the inmates' food, shelter, and clothing, gives permission for a

15  prisoner to be allowed the privilege of working, the state's absolute power over the inmate is a

16  power that is not a characteristic of-and indeed is inconsistent with-the bargained-for exchange of

17  labor which occurs in a true employer-employee relationship.  Plaintiff has stated no economic

18  need for the FLSA -- none.  See Gilbreath v. Cutter Biological Inc. 931 F.3d 1320.

19      Plaintiff has not stated facts to address any of the above factors.  Plaintiff thus fails, and

20  appears unable, to state a cognizable wage claim under the FLSA.

21                              Thirteenth Amendment

22      The law is clear that prisoners may be required to work and that any compensation for

23  their labor exists by grace of the state. Vanskike v. Peters, 974 F.2d 806, 809 (7th Cir. 1992)

24  (citing Draper v. Rhay, 315 F.2d 193, 197 (9th Cir.), cert. denied, 375 U.S. 915 (1963); Sigler v.

25  Lowrie, 404 F.2d 659 (8th Cir.1968), cert. denied, 395 U.S. 940 (1969)).  The Court was unable

26  to find any case authority to justify a digression from this well established law when the case

27  involves and SVP, rather than a prisoner.  Further, Plaintiff's factual allegations do not show that

28  he is forced to hold a job at CSH.  Rather his facts show that inmates involved in treatment are

1    allowed first choice of jobs and/or vocational training when such positions become available –

2    which implies a voluntary election to participate in vocational training/placement.  (Doc. 1, p.

3    14.)  Plaintiff is unable to state a cognizable claim that he is being forced into involuntary

4    servitude in violation of the Thirteenth Amendment.

5    <u>                      Fourteenth Amendment</u>

6        The Due Process Clause of the Fourteenth Amendment protects prisoners from being

7    deprived of life, liberty, or property without due process of law.  <u>Wolff v. McDonnell</u>, 418 U.S.

8    539, 556 (1974).  Plaintiff has not alleged any facts that would support a claim that he was

9    deprived of a protected interest without procedural due process as to his wages, or lack thereof.

10       "To establish a violation of substantive due process . . . , a plaintiff is ordinarily required

11   to prove that a challenged government action was clearly arbitrary and unreasonable, having no

12   substantial relation to the public health, safety, morals, or general welfare.  Where a particular

13   amendment provides an explicit textual source of constitutional protection against a particular

14   sort of government behavior, that Amendment, not the more generalized notion of substantive

15   due process, must be the guide for analyzing a plaintiff's claims."  <u>Patel v. Penman</u>, 103 F.3d

16   868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 117

17   S. Ct. 1845 (1997); <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998).  Plaintiff has not

18   alleged any facts that would support a claim that his rights under the substantive component of

19   the Due Process Clause were violated by the wages he received.

20   <u>                      Equal Protection Clause</u>

21       The Equal Protection Clause requires that persons who are similarly situated be treated

22   alike.  <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985).  An equal

23   protection claim may be established in two ways.   First, a plaintiff establishes an equal

24   protection claim by showing that the defendant has intentionally discriminated on the basis of the

25   plaintiff's membership in a protected class. <u>See</u>, <u>e.g.</u>, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668,

26   686 (9th Cir.2001).  Under this theory of equal protection, the plaintiff must show that the

27   defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.

28   <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that:  (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.   If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley,  375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

Plaintiff states that patients at Atascadero State Hospital were paid state or federal minimum wages, all patients whose commitment was "penal" in nature (which the Court infers to mean SVP's) received sub-minimum wages, and that he receives one dollar ($1.00) per hour at CSH.[3]  However, Plaintiff states no facts to show that the wages he received were based on an impermissibly motivated selective enforcement.  Further, Plaintiff has not shown that he is a member in a protected class, or that the defendants' actions were a result thereof.

### 8.  *Double Jeopardy and Ex Post Facto*

The Supreme Court has held that "[a]n Act, found to be civil, cannot be deemed punitive 'as applied' to a single individual in violation of the Double Jeopardy and Ex Post Facto clauses and provide cause for release." Seling v. Young, 531 U.S. 250, 267 (2001).  Similarly, the California Supreme Court stressed the civil nature of a sexually violent predator commitment and has rejected challenges to California's SVP Act based on the Ex Post Facto and Double Jeopardy Clauses of the federal constitution.  See Hubbart v.Super. Ct., 19 Cal.4th 1138, 1171 (1999).

---

[3] Plaintiff is advised that, if he intends to pursue claims regarding his confinement at Atascadero State Hospital he must do so in a different legal action.  F.R.Civ.P. Rule 18A(a).

Plaintiff's claims based on the Double Jeopardy and Ex Post Facto clauses of the federal constitution are foreclosed.  Hydrick v. Hunter 500 F.3d 978, 993 (9th Cir. 2007).

### 9.  *Habeas Corpus*

Plaintiff states he's applying for "a 42 U.S.C. § 1983 Habeas Corpus."  (Doc. 1, pg. 1.) However, all of Plaintiff's allegations imply that he is applying for relief under 42 U.S.C. § 1983. If Plaintiff intends to seek habeas corpus relief, he is advised that a habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement.  Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.  A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ."  28 U.S.C. § 2254(a).

### 10.  *Retaliation*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law]   . . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution. . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. § 1983.

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  To establish a prima facie case, plaintiff must allege

1    and show that defendants acted to retaliate for his exercise of a protected activity, and defendants'

2    actions did not serve a legitimate penological purpose.  See Barnett v. Centoni, 31 F.3d 813, 816

3    (9th Cir. 1994); Pratt 65 F.3d at 807.  The injury asserted in retaliation cases is the retaliatory

4    conduct's chilling effect on the plaintiff's First Amendment rights.  See Hines v. Gomez, 108

5    F.3d 265, 269 (9th Cir. 1997); Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).

6         A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus

7    between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action).

8    McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); see Mt. Healthy City School Dist. Bd. of

9    Educ. v. Doyle, 429 U.S. 274 (1977).  The prisoner must submit evidence, either direct or

10   circumstantial, to establish a link between the exercise of constitutional rights and the allegedly

11   retaliatory action.  Pratt, 65 F.3d at 806.  Timing of the events surrounding the alleged retaliation

12   may constitute circumstantial evidence of retaliatory intent.  See Pratt 65 F.3d at 808; Soranno's

13   Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).  Plaintiff merely requests the court

14   to issue an order barring CSH administrators from taking any reprisals against him.  Plaintiff has

15   not alleged any facts to show an injury, or to otherwise support a claim that he has been retaliated

16   against as a result of pursuing this action.  Thus, Plaintiff fails to state a cognizable claim for

17   unconstitutional retaliation at this time.

18   **II.   CONCLUSION**

19        For the reasons set forth above, Plaintiff's complaint is dismissed, with leave to file an

20   amended complaint within thirty days.  If Plaintiff needs an extension of time to comply with this

21   order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the

22   date of service of this order.

23        Plaintiff must demonstrate in his complaint how the conditions complained of have

24   resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227

25   (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is

26   involved.  There can be no liability under section 1983 unless there is some affirmative link or

27   connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423

28   U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588

1   F.2d 740, 743 (9th Cir. 1978).

2    Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what

3   each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal

4   rights, Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007).  Although accepted as true, the

5   "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . .

6   ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

7    Plaintiff is further advised that an amended complaint supercedes the original complaint,

8   Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

9   (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded

10  pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an

11  original complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d

12  at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord

13  Forsyth, 114 F.3d at 1474.

14   The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified

15  by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff

16  may not change the nature of this suit by adding new, unrelated claims in his second amended

17  complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

18   Based on the foregoing, it is HEREBY ORDERED that:

19   1. Plaintiff's complaint is dismissed, with leave to amend;

20   2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

21   3. Within **thirty (30) days** from the date of service of this order, Plaintiff must

22    either:

23    a. File an amended complaint curing the deficiencies identified by the Court

24     in this order, or

25    b. Notify the Court in writing that he does not wish to file an amended

26     complaint and wishes to proceed only on the claims identified by the Court

27     as viable/cognizable in this order; and

28   4. If Plaintiff fails to comply with this order, this action will be dismissed for failure

to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

**Dated:**   **December 3, 2008**                         **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE